Dissenting opinion filed by Circuit Judge Wallach.
Newman, Circuit Judge.
Ericsson Incorporated and Telefonaktiebolaget LM Ericsson (collectively, "Ericsson") appeal the decision of the Patent Trial and Appeal Board ("PTAB") on inter partes review, in which Ericsson is the Petitioner and Intellectual Ventures I LLC ("IV") is the Patent Owner. The PTAB sustained the patentability of claims 1-16 of U.S. Patent No. 6,952,408 ("the '408 patent").[1]
*1338 We conclude that the PTAB erred in its decision with respect to claim 1, the only claim whose patentability was analyzed by the PTAB. We reverse as to claim 1, vacate as to claims 2-16, and remand for determination of patentability of claims 2-16.
Standards of Review
PTAB decisions are reviewed in accordance with the Administrative Procedure Act, 5 U.S.C. § 706(2). Agency findings of fact are reviewed for support by substantial evidence in the agency record, and agency rulings of law are reviewed for correctness in accordance with law. See In re Gartside , 203 F.3d 1305, 1316 (Fed. Cir. 2000).
"Anticipation" in patent terms means that the claimed invention is not new; that is, the invention as claimed was already known. Anticipation is a question of fact, and a finding of anticipation requires that every limitation of the claim is present in a single prior art reference. See, e.g. , Blue Calypso, LLC v. Groupon, Inc. , 815 F.3d 1331, 1341 (Fed. Cir. 2016) ; In re Gleave , 560 F.3d 1331, 1334 (Fed. Cir. 2009).
"Obviousness" is a matter of law based on underlying factual findings, and is grounds for unpatentability when the claimed subject matter is not identically described, if the subject matter as a whole would have been obvious to a person having ordinary skill in the field of the invention. 35 U.S.C. § 103(a) ; see KSR Int'l, Inc. v. Teleflex, Inc. , 550 U.S. 398, 406-07, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007). When obviousness is based on information from a combination of sources, the question is whether a person of ordinary skill in the field would have been motivated to select and combine this information, and with a reasonable expectation of achieving the desired result. See, e.g. , Merck & Cie v. Gnosis S.p.A. , 808 F.3d 829, 833 (Fed. Cir. 2015), cert. denied , --- U.S. ----, 137 S.Ct. 297, 196 L.Ed.2d 238 (2016).
The '408 Patent -Institution and Final Decision
The '408 patent is entitled "Method of Baseband Frequency Hopping Utilizing Time Division Multiplexed Mapping between a Radio Transceiver and Digital Signal Processing Resources." Frequency hopping is used in wireless systems in which a basestation communicates with entities (such as mobile subscribers) on varying radio frequencies, so as to reduce interference among communications. The '408 patent's "Abstract" describes the method as follows:
A method of frequency hopping is supported by a basestation having a broadband transceiver. The method permits changing physical channels upon which mobile subscribers communicate with the basestation, wherein the broadband transceiver is operated using static transceiver frequencies, the method exclusive of switching communication signals between transceivers. In one embodiment, the method maps baseband output signals from a digital channelizer which represent physical channels to ones of digital signal processors representing logical channels and baseband input signals of a digital combiner to ones of logical outputs of digital signal processors according to a mapping signal.
'408 patent, at [57]. The PTAB effectively defined "frequency hopping" as "changing from a first of said physical RF [radio frequency] channels upon which said mobile subscribers communicate with said basestation to a second of said physical RF channels, while maintaining a same logical channel." PTAB Dec. at 3-4, 19. The parties agree with this definition. See J.A.
*1339 1049 (declaration of Dr. Stark, Ericsson's expert); J.A. 3327 (declaration of Dr. Wells, IV's expert).
Figure 1 is "a preferred embodiment," of the '408 patent method, "a block diagram of a wideband digital basestation making use of a time division multiplex (TDM) bus according to the invention":
'408 patent, Fig. 1; col. 3, ll. 46-48; col. 4, ll. 12-13. The "Detailed Description of a Preferred Embodiment" further describes the basestation and mobile subscribers, and refers to the European GSM [Global System for Mobile Communications] frequency hopping standard:
More particularly, the basestation 10 exchanges radio frequency (RF) signals with a number of mobile subscriber terminals (mobiles) 40a, 40b. The RF carrier signals are modulated with voice and/or data (channel) signals which are to be coupled to the public switched telephone network (PSTN) by the basestation 10. The particular modulation in use may be any one of a number of different wireless (air interface) standards such as ... frequency hopping standards such as the European GSM, personal communication network (PCN) standards, and the like.
'408 patent, col. 4, ll. 36-48.
Claim 1 of the '408 patent is as follows:
1. A method for frequency hopping in a cellular communications system having multiple mobile subscribers communicating on a plurality of different physical RF channels on any time division multiplexed scheme with a basestation having a broadband transceiver, said method comprising the steps of:
operating said broadband transceiver using a plurality of transceiver RF frequencies, each of which represents one of said physical RF channels; and
changing from a first of said physical RF channels upon which said mobile subscribers communicate with said basestation to a second of said physical RF channels, while maintaining a same logical channel.
'408 patent, col. 13, ll. 15-28. Claims 2-16 depend successively from claim 1, each with additional limitations.
*1340 Ericsson petitioned for inter partes review of all claims. The PTAB instituted review of all claims, on two grounds:
1) anticipation of claims 1-10 and 12-16 under § 102(b) by U.S. Patent No. 5,592,480 ("the '480 patent") ;
(2) obviousness of claims 1-16 based on the '480 patent together with the GSM Standard "Radio Sub-system Link Control, European Telecommunications Standards Institute, v. 3.8.0" ("the GSM standard") and U.S. Patent No. 5,537,435 ("the '435 patent").[2]
PTAB Dec. 3.
Both sides presented argument and expert testimony. The PTAB ruled that claim 1 is neither anticipated nor obvious. The PTAB did not separately analyze dependent claims 2-16, and ruled that Ericsson had "not demonstrated, by a preponderance of the evidence, that any of claims 1-16 is anticipated by the '480 patent or obvious over the '480 patent, GSM 05.02, and the '435 patent." Id. at 33. The PTAB held all 16 claims patentable, and adhered to this decision on reconsideration.
In view of the PTAB's limitation of its analysis to claim 1, our review is focused on claim 1. See Michigan v. EPA, --- U.S. ----, 135 S.Ct. 2699, 2710, 192 L.Ed.2d 674 (2015) (reciting the "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action" (citing S.E.C. v. Chenery Corp. , 318 U.S. 80, 87, 63 S.Ct. 454, 87 L.Ed. 626 (1943) ).
In brief, Ericsson argues that claim 1 is a "generic" statement of the known method of frequency hopping implemented at broadband basestations. Ericsson states that all the limitations of claim 1 are shown in the '480 patent, and that claim 1 is no more than a broad recitation of the general method of frequency hopping in mobile communications, as disclosed in the '480 patent in general terms. Ericsson states that if any additional content in the '408 specification may serve to distinguish the '480 patent, such content is not present as a limitation to claim 1. Thus Ericsson argues that claim 1 is anticipated by the '480 patent or is obvious from the '480 patent in combination with the GSM reference.
I
THE PRIOR ART
The '480 Patent
The PTAB described the '408 and '480 patents as "not related," but "shar[ing] significant disclosure." PTAB Dec. 10. The '480 patent presents the following "Abstract":
A wireless communication system basestation making use of a wideband, multichannel digital transceiver having incorporated therein a time division multiple-access (TDM) bus for providing digital samples of a plurality of wireless communication channels, wherein the time slot duration and frame rate of the TDM bus may be reconfigured. The invention allows various air interface standards, even those having different channel bandwidths, to be serviced by the same basestation, without having to install additional or different equipment, and by automatically redistributing signal processing resources, eliminating the need to reconfigure the basestation when different types of wireless signaling must be accommodated.
'480 patent, at [57].
In Figure 1, the '480 patent shows "a preferred embodiment" as a "block diagram *1341 of a wideband digital basestation making use of a time division multiplex (TDM) bus according to the invention." '480 patent, col. 4, ll. 26-28.
In its "Detailed Description of a Preferred Embodiment," the '480 patent describes Figure 1:
FIG. 1 is a block diagram of a wideband wireless digital basestation 10 according to the invention. Briefly, the basestation 10 consists of a receive antenna 11, one or more wideband digital tuners 12, one or more digital channelizers 14, a time division multiplex (TDM) bus 16, a control bus 17, a plurality of digital signal processors (DSPs), a first subset of which are programmed to operate as demodulators 18-1-1, 18-1-2, ..., 18-1-P (collectively, demodulators 18-1); a second subset of which are programmed to operate as modulators 18-2-1, 18-2-2, ..., 18-2-Q; and a third subset 18-u of which are presently idle, transport signal (T-1) encoder 20, a T-1 decoder 22, one or more digital combiners 24, one or more wideband digital exciters 26, a power amplifier 28, a transmit antenna 29, a basestation control processor (controller) 30, and a TDM synchronization clock generator 32.
'480 patent, col. 4, l. 55-col. 5, l. 3. The patent further describes the preferred embodiment:
More particularly, the basestation 10 exchanges radio frequency (RF) signals with a number of mobile subscriber terminals (mobiles) 40a, 40b. The RF carrier signals are modulated with voice and/or data (channel) signals which are to be coupled to the public switched telephone network (PSTN) by the basestation 10. The particular modification in used [sic] may be any one of a number of different wireless (air interface) standards such as ... frequency hopping standards such as the European Groupe Speciale Mobile (GSM), personal communication network (PCN) standards, and the like.
'480 patent, col. 5, ll. 4-17. The "Detailed Description of a Preferred Embodiment" for the '480 patent does not differ in any meaningful manner from the "Detailed Description" for the '408 patent quoted ante . In addition, many of the components of the '408 patent's processing of RF modulated signals are described in a similar *1342 manner in the '480 patent. Compare '408 patent, col. 4, l. 53-col. 5, l. 56 and col. 6, l. 35-col. 7, l. 12 with '480 patent, col. 5, l. 21-col. 6, l. 26 and col. 6, l. 60-col. 7, l. 35; see also PTAB Dec. 10.
Ericsson does not disagree that the '408 patent specification describes additional components used in frequency hopping. The PTAB stated, "comparing Figure 3 of the '480 patent with Figure 8 of the '408 patent, the two patents describe bus drivers with similar components. Nevertheless, Figure 3 of the '480 patent lacks the DP RAM FHOP 312, Comparator 206, control processor 300, and RX Ping/PONG 304 components shown in Figure 8 of the '408 patent." PTAB Dec. 11-12. The PTAB found that these components "implement[ ] a frequency hopping functionality" in the '408 patent. Id. at 12. Ericsson's position is that claim 1 of the '408 patent claims the general method for frequency hopping in a cellular communication system on a broadband basestation, and that this general method is disclosed in the '480 patent reference.
The GSM Reference
The GSM mobile communication standard is referenced in both the '480 patent and the '408 patent, see supra . GSM is a mobile communication standard of the European Telecommunications Standards Institute. The '480 patent states the GSM "frequency hopping standard" may be used in cellular communications systems. '480 patent, col. 5, ll. 9-17. GSM is the "de facto global standard for mobile communications with over 90% market share and is available in over 219 countries and territories." PTAB Dec. 12 (quoting declaration of Dr. Stark) ).
The GSM reference includes a definition of frequency hopping and algorithms for mapping logical channels onto physical channels. See id. at 13 ("GSM 05.02 describes an algorithm for mapping logical channels onto physical channels. In particular, GSM 05.02 describes an algorithm for hopping sequence generation." (internal citations omitted) ). GSM 05.02 in Section 6.2.3 sets forth the GSM frequency hopping algorithm, reproduced below:
*1343 J.A. 1447-49 (discussing and setting forth the algorithm); see also J.A. 1464 (Figure 6) (algorithm diagram). The '480 patent states support for "a number of different wireless (air interface) standards" including "frequency hopping standards such as the European Groupe Speciale Mobile (GSM), personal communication network (PCN) standards, and the like." '480 patent, col. 5, ll. 4-17.
The '435 Patent[3]
The '435 patent describes a multichannel wireless communication "transceiver apparatus employing wideband FFT [Fast Fourier Transform] channelizer with output sample timing adjustment and inverse FFT combiner." '435 patent, at [54]. Ericsson cited this patent for "further details regarding digital channelizers and combiners in basestations, including dynamic mapping of digital channelizer outputs to DSP inputs." PTAB Dec. at 20. The PTAB
*1344 in its final decision did not discuss the combination of the '435 patent with the '480 patent and the GSM standard because it did not reach the dependent claims.
II
PATENTABILITY OF CLAIM 1
Anticipation-The '480 Patent
The PTAB recognized the reference to frequency hopping in the '480 patent. Ericsson's argument is that claim 1 generally recites frequency hopping, and that every limitation of claim 1 is in the '480 patent.
IV's expert, Dr. Wells, testified "basestations that support frequency hopping were known before 1998," prior to the 2001 priority date of the '408 patent. J.A. 2538-39 (13:6-14:9) (deposition testimony of Dr. Wells); J.A. 3323-24 (¶ 40) (declaration of Dr. Wells); see also J.A. 3252-54, 3260-65 (excerpts from "Ex. 2003-GSM System for Mobile Communications" detailing basestations according to the "canonical GSM architecture" in 1992).
Each term of claim 1, including the terms in the preamble, is recited in the '480 patent :
• The preamble of claim 1 recites a "method for frequency hopping in a cellular communications system"; this tracks the '480 patent's "frequency hopping standards such as the [GSM]" as may be used in a cellular communications system. '480 patent, col. 5, ll. 6-17, [57]; see J.A. 2539 (14:10-21) (deposition testimony of Dr. Wells).
• The preamble recites "multiple mobile subscribers communicating" with the basestation. The '480 patent recites "the basestation exchanges radio frequency (RF) signals with a number of mobile subscriber terminals." '480 patent, col. 5, ll. 4-6; see J.A. 2540 (15:1-19) (deposition testimony of Dr. Wells); J.A. 3317 (¶ 26) (expert declaration of Dr. Wells).
• The preamble requires that the mobile subscribers are "communicating on a plurality of different physical RF channels." The '480 patent's basestation "exchanges radio frequency (RF) signals with a number of mobile subscriber terminals" and "[a]s the basestations' demands increases, [ ] additional RF channels can be serviced." '480 patent, col. 5, ll. 4-6; col. 12, ll. 41-44; see J.A. 2540 (15:1-19) (deposition testimony of Dr. Wells); see also J.A. 3317 (¶ 26) (expert declaration of Dr. Wells).
• The preamble recites the use of "any time division multiplexed scheme with a basestation having a broadband transceiver." The '480 patent is for a "wideband, multichannel digital transceiver having incorporated therein a time-division multiple-access (TDM) bus." '480 patent, at [57]; col. 2 l. 63-col. 3, l. 2. The GSM standard's "access scheme is Time Division Multiple Access (TDMA)." J.A. 1424 (GSM Standard 05.01 (Section 5) ); see J.A. 2541 (16:6-9) (deposition testimony of Dr. Wells); J.A. 3318 (¶ 27) (expert declaration of Dr. Wells).
• Claim 1, first clause, recites "operating said broadband transceiver using a plurality of transceiver RF frequencies, each of which represents one of said physical RF channels." The '480 patent's broadband basestation "exchanges radio frequency (RF) signals with a number of mobile subscriber terminals" and "[a]s the basestations' demands increases, [ ] additional RF channels can be serviced." '480 patent, col. 5, ll. 3-6; col. 12, ll. 41-44; see J.A. 2540 (15:1-19) (deposition testimony of Dr. Wells);
*1345 see also J.A. 3317 (¶ 26) (expert declaration of Dr. Wells).
• Claim 1, second clause, recites "changing from a first of said physical RF channels upon which said mobile subscribers communicate with said basestation to a second of said physical RF channels while maintaining the same logical channel." The PTAB defined this as frequency hopping. PTAB Dec. 3-4, 19. The '480 patent states that its basestation supports use of a number of wireless communication standards, including "frequency hopping standards such as the European Groupe Speciale Mobile (GSM), personal communication network (PCN) standards, and the like." '480 patent, col. 5, ll. 4-17; see also J.A. 2552-53 (27:12-28:1) (deposition testimony of Dr. Wells) ("One has to keep the same logical channel to preserve a call."); J.A. 3319 (¶ 30) (expert declaration of Dr. Wells) ("The principle of GSM frequency hopping, when implemented, is to change the frequency used for transmission (and reception) every TDMA frame.").
The PTAB acknowledged that there were relevant disclosures in the '480 patent, but reasoned that the '480 patent did not anticipate because frequency hopping was an "optional ... functionality." PTAB Dec. 17. The PTAB also stated that "[Ericsson] has not shown persuasively that the '480 patent discloses 'changing from a first of said physical RF channels upon which said mobile subscribers communicate with said basestation to a second of said physical RF channels, while maintaining a same logical channel,' as recited in claim 1 and each of its dependents (claims 2-10 and 12-16)." Id. at 19. This statement of the '480 disclosure is contrary to the evidence.
Both the '480 patent and the '408 patent provide substantially identical diagrams of the broadband base station. Figure 1, shown supra for the '408 patent, is substantially identical in the '480 patent :
'480 patent, Fig. 1. Both Figures 1 depict the wideband digital basestation 10 communicating with mobile terminals 40 via radio frequency (RF) signals. Also, Figure *1346 2 of the '408 patent and Figure 2 of the '480 patent show the same routing of data on and off the TDM bus to the digital signal processors.
The PTAB acknowledged that the two patents "share significant disclosure." PTAB Dec. 10. Claim 1 of the '408 patent is directed to the shared disclosure; any differences in the disclosures are not in claim 1. The PTAB points to subordinate figures as showing differences between the '480 and '408 patents. Id. at 5-6, 12, 27-28. However, such differences are not reflected in claim 1, whose scope is indistinguishable from the disclosure of the '480 patent.
IV argued before the PTAB that there are differences in details and in performance; for example, IV's expert stated that the method described in the '480 patent cannot remap the incoming data fast enough to support frequency hopping. J.A. 403-08; J.A. 3365 (¶ 101). This contradicts the statement in the '480 patent that the GSM frequency hopping standard may be used. '480 patent, col. 5, ll. 4-17.
To contradict a reference, an unsupported opinion is not substantial evidence. See Homeland Housewares, LLC v. Whirlpool Corp. , 865 F.3d 1372, 1378 (Fed. Cir. 2017) ("[W]e must disregard the testimony of an expert that is plainly inconsistent with the record, or based on an incorrect understanding of the claim[s]." (citations and internal quotation marks omitted) (second alteration in original) ). Although the PTAB adopted the opinion of IV's expert and stated on rehearing that it found Ericsson's expert lacking in credibility, this is not a matter of credibility but of technological evidence.
Ericsson agrees that there are differences in the disclosures, in that the '408 specification describes "an added memory and supporting components shown in the '408 patent's Figure 8 (corresponding to '480 Patent Figure 3)." Ericsson Br. 2-3, 19. Ericsson points out that this added memory, DP RAM FHOP 312, is not required by any of the claims. Ericsson states that the PTAB appears to have misunderstood the technology.
IV argues that even if the PTAB misunderstood the technology, the PTAB result is correct. But the specification of the '480 patent teaches that frequency hopping may be used, and "each and every element" of claim 1 of the '408 patent is disclosed in the '480 patent, "arranged or combined in the same way as in the claim." Blue Calypso , 815 F.3d at 1341 (quoting In re Gleave , 560 F.3d at 1334 ). We conclude that substantial evidence does not support the PTAB's decision, and that claim 1 is anticipated by the disclosure in the '480 patent.
The Question of Obviousness
The PTAB held that claim 1 would not have been obvious because Ericsson did not prove a reasonable expectation of success on the part of the skilled artisan.[4] The PTAB stated that Ericsson did not show that the "obviousness combination it proposes would have worked for its intended purpose. For the same reasons, Petitioner has not shown that a skilled artisan would have a reasonable expectation of success in combining the teachings of the '480 patent and GSM 05.02 in the way Petitioner proposes." PTAB Dec. 22.
Ericsson argues that even if we conclude that claim 1 is not anticipated, it is unpatentable as obvious in view of the '480 patent and the GSM reference. IV suggests *1347 that the '480 patent is deficient as a reference in that it does not include computer code or algorithm for frequency hopping. However, the experts were in agreement that a person having ordinary skill in the field would have known how to implement frequency hopping. J.A. 2517-19 (¶ ¶ 37-39) (reply declaration of Dr. Stark); J.A. 2538 (13:12-17) (deposition testimony of Dr. Wells).
The PTAB found that Ericsson failed to demonstrate the "system of the '480 patent could be modified to implement frequency hopping through re-programming of the DP RAM Enable 202 alone." PTAB Dec. 26. The PTAB found that because the DP RAM Enable 202 "merely indicates that a 'frequency should be put on the bus for some DSP,' the basestation controller must re-program some other component to place appropriate data on TDM bus 16 or re-program the DSPs to change how they take data off of TDM bus 16." Id. at 30 (quoting testimony of Dr. Stark); see also id. at 27.
On Petition for Rehearing, Ericsson argued that the PTAB erred in its understanding of the '480 subject matter and ignored Figure 6 of the '480 patent, wherein the DP RAM Enable 202 would also be reprogrammed each time frame by the basestation controller, and that it would route data off the TDM bus and on to the correct DSP. The PTAB stated that "[a]s with the DP RAM Enable 202 of Figure 3, the DP RAM Enable 202 of Figure 6 does not determine which slot is associated with which DSP. It simply allows data to pass through during an enabled time slot to FIFO [First In First Out] Data 214, which clocks data into the DSP associated with the enabled time slot." Rehearing Dec. 7 (citing '480 patent, col. 10, ll. 36-43).
Ericsson correctly points out that the '480 patent's Figure 6 diagrams components connected to a single DSP, and the corresponding description shows that it depicts the operation of a single TDM FIFO receiver. '480 patent, col. 8, ll. 11-18; col. 10, ll. 34-43. The specification makes clear that each DSP includes its own TDM FIFO receiver. The patent recites:
An exemplary DSP demodulator 18-1-1 and modulator 18-2-1 are also shown in FIG. 2. The demodulator DSP 18-1-1 includes a TDM first-in first-out (FIFO) driver 180-1, a TDM FIFO receiver 182-1, a DSP central processing unit 184-1 and program memory 186-1. Similarly, the modulator DSP 18-2-1 includes a TDM FIFO driver 180-2, a TDM FIFO receiver 182-2, a DSP central processing unit 184-2 and program memory 186-2.
'480 patent, col. 8, ll. 11-18. The '480 patent states that Figure 6 is "[a] detailed diagram of the TDM FIFO receiver 182-1." Id., col. 10, ll. 34-35. The '480 patent states that each TDM FIFO Receiver contains, in addition to other components, an instance of DP-RAM 202. Id., col. 10, ll. 35-36.
The expert testimony submitted by IV is not to the contrary. Dr. Wells testified:
Figs. 3, 5, 6, and 7 show[ ] the instances of DP RAM enable 202 (Fig. 3 reproduced below as an example). Although all four instances of DP RAM enable 202 are shown with the same reference designator ("202"), there are multiple instances to facilitate data transfer. On the left hand side of TDM bus 17, at least two instances are required to service each and every DSP (i.e., caller). On the right hand side of the TDM bus 17, multiple instances are required to service each and every DSP (i.e., caller). In a typical GSM case, the number DP RAM enable 202 could easily exceed 100 separate devices.
J.A. 3356-57 (declaration of Dr. Wells).
The PTAB's conclusion that mapping data to a specific DSP is not accomplished by the DP RAM Enable 202 depicted in Figure 6 is unsupported by substantial *1348 evidence. As diagrammed in Figure 6, data can only be routed off the TDM bus to a single DSP, a single destination. The DP RAM Enable 202 in Figure 6 of the '480 patent informs receiver 212 and FIFO DATA 214 that available data should be retrieved off the TDM bus, and transmitted onto the corresponding DSP Processor. Each TDM FIFO Receiver is connected to a single DSP Processor, and the instance of DP RAM Enable 202 contained in the TDM FIFO Receiver communicates with its corresponding receiver 212, also contained therein, as to the appropriate timeslot to pull data off the bus. The '480 patent states, referencing Figure 8, a "flowchart of [ ] operations":
An available modulator DSP and demodulator DSP resource are then identified (step 303) by examining a list 33 of free DSP resources maintained in a memory portion 31 of the basestation controller 30 (FIG. 1). The list 33 is updated by removing the two DSPs once allocated.
...
In the next step (306), the appropriate destination and source information is written into the various TDM bus drivers and receivers.
In particular, given a receive channel identification, a receive channel signal time slot on the TDM bus is thus identified. The corresponding location of the enable DP-RAM 202 in the TDM DP driver 144 associated with this time slot is then set to a logical "1" in the manner already described.
Next, a logical "1" is also written into the enable DP-RAM in the TDM receiver 182-1 associated with the DSP demodulator 18-1 which was identified as being an available resource. If the per-channel bandwidth is greater than that which can be supported by a single timeslot, then a sufficient number of logical "1"s are written into the appropriate locations.
Also, now given a transmit channel identification, the free DSP modulator 18-2 is enabled (step 306) to use the TDM bus 16, by writing a logical "1" into the enable DP-RAM of the TDM driver 180-2 connected to the available one of the DSP modulators 18-2. To complete the connection, a logical "1" is also written into the location of the TDM DP receiver 244 associated with the identified transmit channel.
'480 patent, col. 10, l. 52-col. 11, l. 27; see also Figs. 2 and 6.
The DP RAM Enable 202 permits or blocks data to pass through "an enabled time slot to FIFO Data 214," as the PTAB found. But it is this activity across the plurality of TDM FIFO Receivers, one contained in each DSP in the '480 patent's basestation, as shown in Figure 1, that actually "determine[s] which slot is associated with which DSP." Rehearing Dec. 7 (concluding the opposite); see also '480 patent, col. 8, ll. 11-18; col. 10, ll. 34-43. The expert testimony is in accord. J.A. 2879-92 (deposition testimony of Dr. Stark); J.A. 2513 (¶ 31) (reply declaration of Dr. Stark); J.A. 3349-52 (expert declaration of Dr. Wells).
Substantial evidence does not support the PTAB's ruling of nonobviousness in view of the '480 patent in combination with the GSM reference.[5]
III
PATENTABILITY OF CLAIMS 2-16
The PTAB did not discuss patentability of dependent claims 2-16, having found *1349 that claim 1, as the broadest claim, is patentable. Since we now reverse the decision as to claim 1, the dependent claims require analysis. We remand for this purpose.
CONCLUSION
We have considered all of the arguments presented by both sides, and conclude that claim 1 is not patentable. We reverse the decision as to claim 1. We vacate the decision as to claims 2-16, and remand for determination of patentability of claims 2-16.
REVERSED IN PART, VACATED IN PART, AND REMANDED
COSTS
No costs.

Ericsson Inc. v. Intellectual Ventures I, LLC , No. IPR2014-00963, Paper No. 29 (P.T.A.B. Oct. 22, 2015) ("PTAB Dec."); Paper No. 31 (P.T.A.B. Dec. 22, 2015) ("Rehearing Dec.").

The PTAB reported that Ericsson stated at oral argument that the three-reference combination was only asserted against claims 3-16. PTAB Dec. 20.

The '480 patent, the '408 patent, and the '435 patent all originated with Airnet Communications Corporation, and are now owned by IV. J.A. 3327(¶ 49); J.A. 266-67; '408 patent, at [73]; see also PTAB Dec. 9, 20.

The PTAB accepted the parties' agreed statement that the person of ordinary skill in this field "would have had at least a B.S. degree in Electrical Engineering, Computer Engineering, or the like, and at least three years of additional academic or industry experience." PTAB Dec. 21.

Our colleague in dissent states that we make no "findings regarding motivation to combine" these references. Dissent 1353. However, the '480 patent itself teaches the combination, reciting "frequency hopping standards such as the [GSM]." '480 patent, col. 5, ll. 4-17.